UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

| | |
|---|---|
| BLANCA M. SIZA,<br><br>Plaintiff,<br><br>-against-<br><br>NEW ERA LAUNDRY WORLD CORP. and RAFAEL GARCÍA, individually,<br><br>Defendants. | Civil Action No. ____________<br><br>COMPLAINT<br><br>JURY TRIAL DEMANDED |

---

Plaintiff Blanca M. Siza, by and through her attorneys, Stillman Legal, P.C., as and for her Complaint against Defendants New Era Laundry World Corp. and Rafael García, alleges as follows:

## NATURE OF THE ACTION

1. Plaintiff Blanca M. Siza worked as a laundry attendant at the laundromat operated by Defendants at 3380 Decatur Avenue, Bronx, New York 10467, from on or about late November 2023 through September 20, 2026.

2. Defendants paid Plaintiff in cash at hourly rates that were below the New York minimum wage in every year of her employment. Defendants paid her no premium for the hours she worked in excess of forty in a workweek, and paid her no additional hour of pay for workdays whose spread exceeded ten hours.

3. For the four consecutive workweeks of August 24, 2026 through September 20, 2026, Defendants paid Plaintiff nothing at all for 159 hours of work.

4. Defendants kept no record of Plaintiff's hours. They required her to report her own hours to a manager by WhatsApp message. They never gave her the wage notice or the wage statements that New York law requires.

5. Plaintiff brings this action under the Fair Labor Standards Act, 29 U.S.C. § 201 et seq. (the "FLSA"), and the New York Labor Law (the "NYLL") and its implementing regulations, to recover her unpaid wages, liquidated damages, statutory damages, prejudgment and post-judgment interest, and attorneys' fees and costs.

## **JURISDICTION AND VENUE**

6. This Court has subject-matter jurisdiction over Plaintiff's federal claims under 28 U.S.C. § 1331 and 29 U.S.C. § 216(b).

7. This Court has supplemental jurisdiction over Plaintiff's state-law claims under 28 U.S.C. § 1367(a). Those claims arise from the same wages, hours and pay practices as the federal claims and form part of the same case or controversy under Article III of the United States Constitution.

8. Venue is proper in this District under 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to Plaintiff's claims occurred in Bronx County, New York, which lies within the Southern District of New York. See 28 U.S.C. § 112(b).

9. Defendants are subject to personal jurisdiction in New York. The corporate Defendant is organized under the laws of the State of New York and operates the laundromat at which Plaintiff worked. The individual Defendant, upon information and belief, resides in New York, and owns and operates the laundromat at 3380 Decatur Avenue.

## **THE PARTIES**

10. Plaintiff Blanca M. Siza is an adult individual who resides in Bronx County, New York. At all relevant times she was an "employee" of Defendants within the meaning of 29 U.S.C. § 203(e)(1) and NYLL §§ 190(2) and 651(5), and a "manual worker" within the meaning of NYLL § 190(4).

11. Defendant New Era Laundry World Corp. is a domestic business corporation organized under the laws of the State of New York, with a filing date of March 23, 2021, which operates a laundromat at 3380 Decatur Avenue, Bronx, New York 10467 under the name "New Era" and also does business as "Laundry Central."

12. Defendant Rafael García, who is also known to employees and customers as "Ralph," is an adult individual who, upon information and belief, is the owner and principal of New Era Laundry World Corp. and who owns and operates the laundromat at 3380 Decatur Avenue and does business in Bronx County, New York.

13. At all relevant times Defendant García exercised operational control over the laundromat's employment practices. He hired Plaintiff. He set her hourly rate and every increase to it, in conversation with her directly. He determined that employees would be paid in cash, without pay stubs and without withholding. He directed the manager who assigned Plaintiff's shifts and collected the hours that employees reported. He decided when and whether employees were paid, and he was the person to whom Plaintiff and other workers addressed their demands for unpaid wages. He told Plaintiff that he would not pay for time she worked beyond her scheduled hours. He had the power to fire her.

14. Each Defendant was Plaintiff's "employer" within the meaning of 29 U.S.C. § 203(d) and NYLL §§ 190(3) and 651(6). Defendants are jointly and severally liable for the wages and damages sought in this action.

## FLSA COVERAGE

15. At all relevant times Defendants operated the laundromat at 3380 Decatur Avenue and related laundromats in the Bronx operated under the same name as a single business enterprise with a common business purpose, common ownership and common control.

16. The laundromat was open to the public seven days a week. It offered self-service washing and drying machines, an attended drop-off service in which employees washed, dried, folded and returned customers' laundry, the retail sale of detergent, soap and related products, and a laundry pick-up and delivery service that was advertised inside the store and through the online platform delivery.com under the business name "Laundry Central," together with a telephone number answered by Defendant García.

17. Defendants employed Plaintiff and other employees who handled, sold or otherwise worked on goods and materials that had been moved in interstate commerce or produced for interstate commerce, including commercial washing machines and dryers manufactured

outside the State of New York, and detergent, soap, bleach, fabric softener, hangers, bags and cleaning supplies produced and shipped from outside the State of New York.

18. Upon information and belief, the annual gross volume of sales made or business done by Defendants' enterprise, including the laundromat at 3380 Decatur Avenue and the related laundromats in the Bronx operated under the same name, exclusive of excise taxes at the retail level that are separately stated, was not less than $500,000 in each year of Plaintiff's employment.

19. Defendants were therefore an enterprise engaged in commerce or in the production of goods for commerce within the meaning of 29 U.S.C. § 203(s)(1)(A), and Plaintiff was employed by such an enterprise.

## FACTUAL ALLEGATIONS

### *A. Plaintiff's hire, training and duties*

20. Defendant García hired Plaintiff in or about late November 2023, together with a manager known to Plaintiff as Reina, to work at the laundromat at 3380 Decatur Avenue. García set Plaintiff's starting rate of pay at $13.50 per hour in a conversation with her.

21. Before Plaintiff's first scheduled shift, Defendants required her to work three days of training at the laundromat, each approximately eight hours long. During those three days she performed the same work that she later performed as a regular employee, under the direction of Defendants' staff, for Defendants' benefit. Defendants paid her nothing for those three days.

22. Plaintiff's first regular shift was on or about December 1, 2023.

23. Plaintiff's duties were to serve customers and operate the register; to sell detergent, soap and other products; to receive customers' drop-off laundry, wash it, dry it, fold it, bag it and return it to the customer; to process laundry that was collected from customers for delivery to their homes; to count the money in the register at the start of her shift; and, at the end of her shift, to clean the washing machines and dryers, remove lint, mop the floor and close out the register.

24. More than twenty-five percent of Plaintiff's working time was spent in physical labor.

25. Plaintiff was not employed in a bona fide executive, administrative or professional capacity within the meaning of 29 U.S.C.  213(a)(1) or 12 N.Y.C.R.R.  142-2.14. She had no supervisory authority over any other employee, exercised no independent judgment or discretion in matters of significance, and was paid on an hourly basis. No other exemption from the minimum wage or overtime requirements of the FLSA or the NYLL applied to her.

26. Plaintiff was ordinarily the only employee on duty during her shifts, and a second employee covered the remaining hours of the day.

***B. Plaintiff's schedule and the hours she worked***

27. From on or about December 1, 2023 until in or about July 2026, Plaintiff's regular weekly schedule was as follows: Monday, Tuesday and Wednesday from 2:00 p.m. to 10:00 p.m.; Friday from 7:00 a.m. to 2:00 p.m.; and Sunday from 7:00 a.m. to 10:00 p.m. Her scheduled days off were Thursday and Saturday. Defendants' workweek ran from Monday through Sunday.

28. That schedule totalled forty-six hours in each workweek: eight hours on each of Monday, Tuesday and Wednesday, seven hours on Friday, and fifteen hours on Sunday.

29. Plaintiff worked that schedule, and therefore worked at least forty-six hours — six hours more than forty — in each workweek from on or about December 1, 2023 until in or about July 2026, other than the partial first week of her employment.

30. By way of example, in the workweek of Monday, June 1, 2026 through Sunday, June 7, 2026, Plaintiff worked forty-six hours, of which six hours were in excess of forty. Defendants paid her at $16.00 per hour for those hours - $1.00 below the applicable basic minimum hourly wage rate of $17.00 - and paid her no premium for the six hours over forty.

31. On Sundays, the interval between the beginning and the end of Plaintiff's workday was fifteen hours, which exceeded ten hours.

32. From time to time Defendants also directed Plaintiff to cover additional shifts on her scheduled days off, including Saturday shifts at the Decatur Avenue laundromat running from 7:00 a.m. to 10:00 p.m., and, on at least one occasion, a Thursday shift at another Bronx laundromat operated under the same name. In each week in which she covered an additional shift, Plaintiff worked more hours than her regular schedule and more than forty hours.

33. In or about July 2026, the manager who assigned shifts reduced Plaintiff's Sunday hours, so that Plaintiff was thereafter scheduled on Sunday from 7:00 a.m. to 2:00 p.m. rather than until 10:00 p.m. From that time until the end of her employment, Plaintiff's regular weekly schedule totalled thirty-eight hours.

***C. Meal periods and work after closing***

34. Defendants never relieved Plaintiff of her duties for a meal period. There was no set time at which she was permitted to stop working to eat, and no other employee was scheduled to take over her duties while she ate.

35. When Plaintiff ate during a shift, she did so while continuing to serve customers, take payments, and attend to the washing machines and dryers. On her fifteen-hour Sunday shifts she was sometimes able to eat briefly at about 5:00 or 6:00 p.m. while continuing to work. Defendants did not provide Plaintiff with a bona fide meal period free of duties on any shift.

36. Defendants did not deduct any meal period from Plaintiff's pay. All of the hours in Plaintiff's scheduled shifts were hours during which she performed work for Defendants.

37. In addition, Plaintiff was regularly required to remain at the laundromat after the end of her scheduled shift, typically for approximately thirty minutes to one hour, because customers remained in the store after closing time or because cleaning and closing tasks were not finished. Defendant García told Plaintiff that he would not pay for a half hour or an hour worked outside the scheduled hours, and Defendants paid her only for her scheduled hours. The weekly hour figures alleged above do not include that additional time.

***D. Plaintiff's rates of pay and how Defendants paid her***

38. Defendants paid Plaintiff on an hourly basis throughout her employment. Defendant García set each rate.

39. Defendants paid Plaintiff at the rate of $13.50 per hour from on or about December 1, 2023 for approximately four months; then at $14.00 per hour for the remainder of 2024; then at $15.00 per hour during 2025; and then at $16.00 per hour from January 2026 until the end of her employment. Defendants paid Plaintiff nothing at all for the three days of training before her first regular shift.

40. The basic minimum hourly wage rate for employees in New York City was $15.00 in 2023, $16.00 in 2024, $16.50 in 2025 and $17.00 in 2026. Each rate that Defendants paid Plaintiff was below the minimum wage rate in force at the time.

41. Defendants paid Plaintiff exclusively in cash. They gave her no check, no direct deposit, and no electronic record. They made no deductions for taxes and gave her no document to sign in connection with her pay.

42. Defendants never paid Plaintiff any additional amount for the hours she worked in excess of forty in a workweek. The cash that Defendants gave her reflected her straight hourly rate multiplied by the hours she had reported, with no premium of any kind for hours over forty.

43. Defendants never paid Plaintiff an additional hour of pay at the basic minimum hourly wage rate for any workday on which the spread of her hours exceeded ten hours.

44. At the start of her employment Defendants paid Plaintiff on Wednesdays. Over time Defendants' payments became progressively later. By way of example, on at least one occasion, Plaintiff was not paid until approximately three weeks after the end of the workweek in which she earned the wages. Plaintiff was frequently paid more than seven calendar days after the end of the workweek in which she earned the wages, and at times weeks after the end of that workweek.

45. Defendants' payments to Plaintiff were made at irregular and unpredictable intervals. Defendants paid Plaintiff no wages at all during the four workweeks from August 24, 2026 through September 20, 2026.

***E. Defendants' failure to keep records and Plaintiff's reporting of her hours by WhatsApp***

46. Defendants did not require Plaintiff to punch in or out. There was no time clock, no punch card and no sign-in sheet at the laundromat. Defendants did not make or keep an accurate record of the hours Plaintiff worked or the wages they paid her.

47. Instead, Defendants required employees to report their own hours to the manager who assigned shifts, by WhatsApp message. Until on or about June 29, 2026, Plaintiff sent those reports to the manager's personal WhatsApp number. On or about June 29, 2026, the manager created a WhatsApp group for the reporting of hours, in which employees who worked at more than one of the Bronx laundromats operated under the same name reported the shifts they had worked.

48. Plaintiff reported her own hours in that group, listing for each workweek the days she had worked, the start and end times of each shift, and her weekly total. The manager received those reports and Defendants paid Plaintiff, when they paid her, on the basis of them.

49. On the morning of September 24, 2026, after Plaintiff had demanded her unpaid wages, Defendants removed Plaintiff from that WhatsApp group.

***F. The four workweeks for which Defendants paid Plaintiff nothing***

50. Defendants paid Plaintiff no wages at all for the four consecutive workweeks of Monday, August 24, 2026 through Sunday, September 20, 2026.

51. In the workweek of August 24 through August 30, 2026, Plaintiff worked thirty-eight hours: Monday, Tuesday and Wednesday from 2:00 p.m. to 10:00 p.m., Friday from 7:00 a.m. to 2:00 p.m., and Sunday from 7:00 a.m. to 2:00 p.m.

52. In the workweek of August 31 through September 6, 2026, Plaintiff worked forty-five hours: the same schedule as the preceding week, together with an additional Thursday shift from 2:00 p.m. to 9:00 p.m. that she covered at another Bronx laundromat operated under the same name. Five of those hours were in excess of forty.

53. In the workweek of September 7 through September 13, 2026, Plaintiff worked thirty-eight hours, on the same schedule as the week of August 24.

54. In the workweek of September 14 through September 20, 2026, Plaintiff worked thirty-eight hours, on the same schedule as the week of August 24.

55. Plaintiff therefore worked 159 hours during those four workweeks, for which Defendants paid her nothing.

56. Plaintiff reported the hours for each of those workweeks to the manager in the WhatsApp group, including the day-by-day start and end times, and wrote in that group that the payment for the preceding week remained outstanding.

57. Plaintiff also demanded payment of her unpaid wages from Defendant García directly, by telephone and by message, on multiple occasions. García repeatedly told her that he would send the money shortly. He did not send it.

58. On Saturday, September 19, 2026, Plaintiff telephoned Defendant García and demanded payment of the wages Defendants owed her. García refused to pay the full amount owed, stated that he would pay what he was able to pay, and stated that if that was not acceptable to her she could leave and he would find another person. He paid her nothing.

59. Plaintiff last worked for Defendants on September 20, 2026. As a result of Defendants' refusal to pay her wages and García's statement that she could leave, Plaintiff performed no work for Defendants after that date. Defendants have never paid her the wages she earned in those four workweeks.

***G. Defendants gave Plaintiff no wage notice and no wage statements***

60. Defendants never gave Plaintiff, at the time of hiring or at any other time, a written notice containing her rate of pay, the basis of that rate, her regular payday, the name of the employer, any doing-business-as name, the address and telephone number of the employer's main office, or the allowances claimed as part of the minimum wage, either in English or in Spanish, which is Plaintiff's primary language.

61. Defendants never gave Plaintiff, with any payment of wages, a statement listing the dates of work covered by the payment, her rate of pay, the number of regular hours and overtime hours worked, gross wages, deductions or net wages.

62. Because Defendants gave Plaintiff no notice and no wage statements, Plaintiff had no record created by her employer of the rate she was being paid, the number of hours credited to her, or how the amounts of cash she was handed had been calculated. Plaintiff was left to reconstruct and report her own hours by WhatsApp message and to rely on Defendant García's oral statements about what he would pay her.

63. As a result, Plaintiff was unable to check the cash payments she received against the hours she had worked, and was unable to learn that the hourly rate Defendants were paying her was below the minimum wage required by law. Had Defendants given her the notice and the statements the law requires, Plaintiff would have learned that her rate was unlawful and would have sought the difference from Defendants at the time, rather than continuing to work for nearly three years at rates below the minimum wage.

64. When Defendants stopped paying Plaintiff altogether in August 2026, the absence of any employer record of her hours and rate left her without documentation of the amount she was owed. Plaintiff had to assemble her own record from the messages she had sent, and she continued to work a further four weeks without pay while she attempted to establish what she was owed and to obtain payment of it. Plaintiff has still not been paid those wages.

***H. Defendants' violations were willful***

65. Defendants knew the hours Plaintiff worked. Defendants' manager set Plaintiff's schedule and received Plaintiff's weekly report of the hours she had worked, and Defendants paid Plaintiff on the basis of those reports.

66. Defendants knew that Plaintiff regularly worked more than forty hours in a workweek and chose not to pay any premium for those hours.

67. Defendant García told Plaintiff that he would not pay her for time worked beyond her scheduled hours.

68. Defendants paid Plaintiff exclusively in cash, kept no record of her hours or wages, issued no wage statements, gave no wage notice and made no withholding, and thereby concealed their failure to pay Plaintiff the minimum wage and the overtime premium the law requires. After Plaintiff demanded her unpaid wages, Defendants removed her from the WhatsApp group in which employees reported their hours, further depriving her of access to the records of the hours she had worked.

69. Plaintiff repeatedly demanded the wages Defendants owed her, and Defendants did not pay them.

70. Defendants' failure to pay Plaintiff the minimum wage, the overtime premium, spread-of-hours pay and her earned wages was willful, and was not undertaken in good faith or on any reasonable ground for believing that it complied with the FLSA or the NYLL.

***I. Summary of Plaintiff's unpaid wages***

71. Over the approximately 148 workweeks of her employment, including the three days of training in late November 2023, Plaintiff worked approximately 6,697 hours, of which approximately 827 hours were in excess of forty in a workweek, and on 138 of her workdays the spread of hours exceeded ten. Those figures do not include the time Plaintiff worked after the end of her scheduled shifts, or the additional shifts she covered on her days off, each of which increases the hours she worked and the wages she is owed.

72. Applying the rates Defendants paid and the basic minimum hourly wage rates in force during each period, Defendants owe Plaintiff no less than $10,504.00 in minimum wages for the hours she worked in the workweeks for which she was paid something; no less than $6,771.50 in overtime compensation; no less than $2,258.00 in spread-of-hours pay; no less than $2,703.00 in wages for the four workweeks of August 24, 2026 through September 20, 2026, for which she was paid nothing; and no less than $360.00 in wages

for the three days of unpaid training in late November 2023. Those amounts total no less than $22,596.50 in unpaid wages.

## CAUSES OF ACTION

## FIRST CAUSE OF ACTION

**Unpaid Minimum Wages under the FLSA, 29 U.S.C. §§ 206 and 216(b)**

**(Against All Defendants)**

73. Plaintiff repeats and realleges each of the foregoing paragraphs as if fully set forth herein.

74. The FLSA requires every employer to pay each employee who is engaged in commerce, or who is employed by an enterprise engaged in commerce, not less than the federal minimum wage of $7.25 per hour for each hour worked.

75. Defendants paid Plaintiff no wages whatsoever for the 159 hours she worked during the four workweeks of August 24, 2026 through September 20, 2026, or for the three days of training that Defendants required her to work before her first scheduled shift, and therefore paid her less than $7.25 for each of those hours.

76. Defendants' violation was willful within the meaning of 29 U.S.C. § 255(a), for the reasons alleged above.

77. Plaintiff is entitled to recover her unpaid minimum wages, an equal amount in liquidated damages, prejudgment interest where permitted, and her reasonable attorneys' fees and costs, under 29 U.S.C. § 216(b).

## SECOND CAUSE OF ACTION

**Unpaid Overtime under the FLSA, 29 U.S.C. §§ 207 and 216(b)**

**(Against All Defendants)**

78. Plaintiff repeats and realleges each of the foregoing paragraphs as if fully set forth herein.

79. The FLSA requires every covered employer to pay an employee, for each hour worked in excess of forty in a workweek, at a rate not less than one and one-half times the employee's regular rate of pay.

80. Plaintiff worked forty-six hours in each workweek from on or about December 1, 2023 until in or about July 2026, other than the partial first week of her employment, and thus worked six hours in excess of forty in each of those workweeks. She worked additional hours in excess of forty in every week in which she covered an additional shift, and forty-five hours in the workweek of August 31 through September 6, 2026. Those totals do not include the additional time Plaintiff regularly worked after the end of her scheduled shifts, for which Defendants also failed to pay her, and which further increased the hours she worked in excess of forty.

81. Defendants paid Plaintiff no overtime premium for any of those hours.

82. Defendants' violation was willful within the meaning of 29 U.S.C. § 255(a), for the reasons alleged above.

83. Plaintiff is entitled to recover her unpaid overtime compensation, an equal amount in liquidated damages, prejudgment interest where permitted, and her reasonable attorneys' fees and costs, under 29 U.S.C. § 216(b).

## THIRD CAUSE OF ACTION

**Unpaid Minimum Wages under the New York Labor Law, §§ 652 and 663**
**(Against All Defendants)**

84. Plaintiff repeats and realleges each of the foregoing paragraphs as if fully set forth herein.

85. The NYLL and the Minimum Wage Order for Miscellaneous Industries and Occupations, 12 N.Y.C.R.R. § 142-2.1, require an employer to pay every employee not less than the basic minimum hourly wage rate for each hour worked.

86. Defendants paid Plaintiff at hourly rates below the applicable basic minimum hourly wage rate throughout her employment, and paid her nothing at all for the 159 hours she worked during the four workweeks of August 24, 2026 through September 20, 2026.

87. Defendants also failed to pay Plaintiff for the three days of training they required her to work before her first scheduled shift, during which she performed work for Defendants' benefit, and for the time she worked after the end of her scheduled shifts.

88. Defendants' violations were willful and were not undertaken in good faith.

89. Plaintiff is entitled to recover her unpaid minimum wages, liquidated damages in an amount equal to one hundred percent of the total of such underpayments, prejudgment interest, and her reasonable attorneys' fees and costs, under NYLL §§ 198(1-a) and 663(1).

**FOURTH CAUSE OF ACTION**

**Unpaid Overtime under the New York Labor Law and 12 N.Y.C.R.R. § 142-2.2**

**(Against All Defendants)**

90. Plaintiff repeats and realleges each of the foregoing paragraphs as if fully set forth herein.

91. Section 142-2.2 of Title 12 of the New York Codes, Rules and Regulations requires an employer to pay an employee for overtime at a wage rate of one and one-half times the employee's regular rate for hours worked in excess of forty in a workweek, and, where the employee's regular rate is below the basic minimum hourly rate, at one and one-half times the basic minimum hourly rate.

92. Plaintiff worked in excess of forty hours in each of the workweeks alleged above, and Defendants paid her no overtime premium of any kind.

93. Defendants' violations were willful and were not undertaken in good faith.

94. Plaintiff is entitled to recover her unpaid overtime compensation, liquidated damages in an amount equal to one hundred percent of those underpayments, prejudgment interest, and her reasonable attorneys' fees and costs, under NYLL §§ 198(1-a) and 663(1).

**FIFTH CAUSE OF ACTION**

**Failure to Pay All Wages Earned, New York Labor Law Article 6, §§ 191 and 198**

**(Against All Defendants)**

95. Plaintiff repeats and realleges each of the foregoing paragraphs as if fully set forth herein.

96. NYLL § 191(1)(a) requires an employer to pay the wages earned by a manual worker not later than seven calendar days after the end of the week in which the wages are earned. NYLL § 198(3) provides that all employees have the right to recover full wages and other compensation accrued to them.

97. Defendants were obligated to pay Plaintiff not less than $17.00 per hour, the basic minimum hourly wage rate in 2026, and Plaintiff performed 159 hours of work during the four workweeks of August 24, 2026 through September 20, 2026.

98. Defendants have never paid Plaintiff any part of the wages she earned in those four workweeks.

99. Plaintiff is entitled to recover those unpaid wages to the extent that they exceed the amounts recoverable under her minimum wage and overtime claims, together with liquidated damages in an amount equal to one hundred percent of the unpaid wages, prejudgment interest, and her reasonable attorneys' fees and costs, under NYLL §§ 198(1-a) and 198(3).

## SIXTH CAUSE OF ACTION

**Spread-of-Hours Pay, 12 N.Y.C.R.R. § 142-2.4**
**(Against All Defendants)**

100. Plaintiff repeats and realleges each of the foregoing paragraphs as if fully set forth herein.

101. Section 142-2.4 of Title 12 of the New York Codes, Rules and Regulations requires an employer to pay an employee one additional hour of pay at the basic minimum hourly wage rate for any day on which the spread of hours exceeds ten hours. The spread of hours is the interval between the beginning and the end of the employee's workday.

102. Plaintiff was paid at rates below the basic minimum hourly wage rate throughout her employment.

103. On each Sunday from on or about December 3, 2023 until the reduction of her Sunday hours in or about July 2026, and on each additional Saturday shift that Plaintiff covered which ran from 7:00 a.m. to 10:00 p.m., the spread of Plaintiff's hours exceeded ten hours.

104. Defendants never paid Plaintiff the additional hour of pay required for any of those days.

105. Plaintiff is entitled to recover that spread-of-hours pay, liquidated damages in an amount equal to one hundred percent of it, prejudgment interest, and her reasonable attorneys' fees and costs, under NYLL §§ 198(1-a) and 663(1).

## SEVENTH CAUSE OF ACTION

**Failure to Provide a Wage Notice, New York Labor Law § 195(1)**

**(Against All Defendants)**

106. Plaintiff repeats and realleges each of the foregoing paragraphs as if fully set forth herein.

107. NYLL § 195(1) requires an employer, at the time of hiring, to give each employee a written notice in English and in the employee's primary language containing, among other things, the employee's rate of pay and the basis of that rate, the employee's regular payday, the name of the employer, and the address and telephone number of the employer's main office.

108. Defendants never gave Plaintiff such a notice, in English, in Spanish, or at all.

109. Plaintiff suffered the concrete injuries alleged above as a result of that failure, including her inability to check the cash payments she received against the hours she worked, her inability to learn that the rate Defendants were paying her was below the minimum required by law, and her resulting continuation in Defendants' employ for nearly three years at unlawful rates.

110. Plaintiff is entitled to recover damages of fifty dollars for each workday that the violation occurred or continued to occur, not to exceed five thousand dollars, together with her reasonable attorneys' fees and costs, under NYLL § 198(1-b).

## EIGHTH CAUSE OF ACTION

**Failure to Provide Wage Statements, New York Labor Law § 195(3)**

**(Against All Defendants)**

111. Plaintiff repeats and realleges each of the foregoing paragraphs as if fully set forth herein.

112. NYLL § 195(3) requires an employer to furnish each employee with a statement with every payment of wages, listing the dates of work covered by the payment, the rate of pay and the basis of that rate, the number of regular hours and overtime hours worked, gross wages, deductions and net wages.

113. Defendants never furnished Plaintiff with any such statement with any payment of wages.

114. Plaintiff suffered the concrete injuries alleged above as a result of that failure, including her inability to determine the amount she was owed when Defendants stopped paying her in August 2026, her need to assemble her own record of her hours from the messages she had sent, and her performance of four further workweeks of unpaid work while she attempted to establish and obtain the amount owed.

115. Plaintiff is entitled to recover damages of two hundred fifty dollars for each workday that the violation occurred or continued to occur, not to exceed five thousand dollars, together with her reasonable attorneys' fees and costs, under NYLL § 198(1-d).

## NINTH CAUSE OF ACTION

**Untimely Payment of Wages to a Manual Worker, New York Labor Law §§ 191(1)(a) and 198**

**(Against All Defendants)**

116. Plaintiff repeats and realleges each of the foregoing paragraphs as if fully set forth herein.

117. NYLL § 191(1)(a) requires an employer to pay a manual worker weekly and not later than seven calendar days after the end of the week in which the wages were earned. Plaintiff was a manual worker, as more than one quarter of her working time was spent in physical labor.

118. Defendants did not pay Plaintiff weekly. Defendants' payments to Plaintiff were frequently made more than seven calendar days after the end of the workweek in which she earned

the wages, and at times weeks after the end of that workweek. Their payments were made at irregular and unpredictable intervals, and they paid her nothing at all during the four workweeks from August 24, 2026 through September 20, 2026.

119. Plaintiff seeks under this cause of action the remedies available under NYLL § 198(1-a) for the wages that Defendants paid to her late. Plaintiff does not seek under this cause of action any recovery duplicative of the unpaid wages sought in her First through Sixth Causes of Action.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in her favor and against Defendants, jointly and severally, and award the following relief:

a. Declaring that Defendants violated the Fair Labor Standards Act and the New York Labor Law and their implementing regulations;

b. Declaring that Defendants' violations were willful and were not undertaken in good faith;

c. Awarding Plaintiff her unpaid minimum wages under the FLSA and the New York Labor Law, in an amount to be determined at trial but no less than $10,504.00;

d. Awarding Plaintiff her unpaid overtime compensation under the FLSA and the New York Labor Law, in an amount to be determined at trial but no less than $6,771.50;

e. Awarding Plaintiff her unpaid spread-of-hours pay under 12 N.Y.C.R.R. § 142-2.4, in an amount to be determined at trial but no less than $2,258.00;

f. Awarding Plaintiff all other wages she earned and was not paid, including the wages she earned during the four workweeks of August 24, 2026 through September 20, 2026, the three days of unpaid training and the unpaid time she worked after the end of her scheduled shifts, in an amount to be determined at trial but no less than $2,703.00 for the four unpaid workweeks alone, exclusive of amounts owed for the unpaid training and post-shift time;

g. Awarding Plaintiff liquidated damages in an amount equal to one hundred percent of her unpaid wages under each statute, and therefore no less than $44,473.00, under 29 U.S.C. § 216(b) and under NYLL §§ 198(1-a) and 663(1);

h. Awarding Plaintiff statutory damages of five thousand dollars under NYLL § 198(1-b) for Defendants' failure to provide the wage notice required by NYLL § 195(1);

i. Awarding Plaintiff statutory damages of five thousand dollars under NYLL § 198(1-d) for Defendants' failure to provide the wage statements required by NYLL § 195(3);

j. Awarding Plaintiff liquidated damages in an amount equal to one hundred percent of the wages that Defendants paid to her late, under NYLL 198(1-a), in an amount to be determined at trial;

k. Awarding Plaintiff prejudgment interest on her unpaid wages under NYLL § 198(1-a) and N.Y. C.P.L.R. §§ 5001 and 5004, and post-judgment interest under 28 U.S.C. § 1961;

l. Awarding Plaintiff an additional fifteen percent of the total judgment as provided by NYLL § 198(4) if any amount of the judgment remains unpaid ninety days after judgment becomes final or ninety days after the expiration of the time to appeal, whichever is later;

m. Awarding Plaintiff her reasonable attorneys' fees and the costs of this action under 29 U.S.C. § 216(b) and NYLL §§ 198 and 663; and

n. Granting such other and further relief as this Court deems just and proper.

## **DEMAND FOR TRIAL BY JURY**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury on all issues so triable.

Dated: New York, New York
September 25, 2026

Respectfully submitted,

STILLMAN LEGAL, P.C.

By: /s/ Lina Stillman
Lina Stillman, Esq.
42 Broadway, 12th Floor
New York, New York 10004
Tel: (212) 832-1000
ls@stillmanlegalpc.com

Attorneys for Plaintiff Blanca M. Siza